T.C. Memo. 1999-163


UNITED STATES TAX COURT


RICK AND RUTH BAIME RICHARDS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12430-97.                    Filed May 14, 1999.


Rick and Ruth Baime Richards, pro sese.

<u>Patrick Lucas</u>, for respondent.


MEMORANDUM OPINION


NAMEROFF, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182.[1]

---

[1] Unless otherwise specified, all section references are to the Internal Revenue Code in effect for the year in issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioners' 1994 Federal income tax in the amount of $1,328 and an accuracy-related penalty under section 6662(a) in the amount of $266.

The issues for decision are: (1) Whether petitioner Rick Richards (Mr. Richards) conducted his writing activity with the objective of making a profit within the meaning of section 183; if so, (2) whether petitioners have substantiated the ordinary and necessary business expenses of this activity; (3) whether petitioner Ruth Baime Richards (Mrs. Richards) conducted her actress-model activity with the objective of making a profit within the meaning of section 183; if so, (4) whether petitioners have substantiated the ordinary and necessary business expenses of this activity; (5) whether petitioners are entitled to carry forward a net operating loss from a prior tax year; and (6) whether petitioners are liable for the accuracy-related penalty under section 6662(a).

No stipulation of facts has been filed. At the time their petition was filed, petitioners resided in Palm Springs, California.

On Schedule C, Profit or Loss From Business, filed with their 1994 income tax return, petitioners reported $1,574 in gross income[2] and the following expenses: (1) "Allowable

---

[2] The actual amount of gross income is $1,674, but $100 of this amount was reported on line 7 of the return as wages.

materials" expenses of $21,270; (2) "allowable" auto/business expenses of $8,540; and (3) "allowable" office/household expenses of $5,132. The total amount of expenses claimed was $34,942, resulting in a net loss of $33,368. The expenses are the combined expenses from Mr. and Mrs. Richards' separate activities. There are attachments to the Schedule C which separate the expenses.

Respondent disallowed the $34,942 of expenses and calculated self-employment tax (and the self-employment tax deduction) on the $1,574 of income. Respondent also disallowed a loss carryover of $15,892 from 1993 and determined that petitioners are liable for the accuracy-related penalty.

For the years 1991 to 1993, 1995, and 1996, petitioners' returns reflected the following income and expenses for their activities:

| Year | Income[1] | Expenses | Profit/(loss) |
|------|--------|----------|---------------|
| 1991 | --- | $28,307 | ($28,307) |
| 1992 | --- | 29,103 | (29,103) |
| 1993 | --- | 30,616 | (30,616) |
| 1995[2] | --- | --- | (24,278) |
| 1996 | $814 | 30,877 | (30,063) |

[1] While petitioners received income from their activities in 1991 to 1993, this income was reported on line 7 of their Form 1040 as wages.
[2] Only the Form 1040 was provided showing the net loss.

1. Writing Activity

In the 1940's, Mr. Richards' first job as a writer was writing stage material for Bob Crosby's band. He wrote comical

lyrics, parodies, and original songs.  Mr. Richards also worked for music publishers in New York, and, at one point, he served in the military.  Then in the 1950's, Mr. Richards switched to writing short stories.  While living in eastern Pennsylvania, Mr. Richards wrote 88 short stories, of which 39 were sold for publication.  Around this time, Mr. Richards also started writing novels.

After they married in the early 1960's, petitioners moved to Palm Springs.  Mr. Richards continued to write novels when petitioners first moved, but shortly thereafter he put that aside to work in the entertainment business.  Mr. Richards had contacts with comedians in California and through them he met producers.  This led to writing situation comedies (sitcoms) for television which Mr. Richards primarily did through the 1960's and 1970's.  The television shows for which Mr. Richards wrote did not have regular staff writers, and he freelanced.  Mr. Richards wrote episodes for "The Lucy Show", "The Odd Couple", "Love American Style", "The Addams Family", "The Beverly Hillbillies", and "Petticoat Junction".  In 1974, Mr. Richards sold a screenplay he had written to a Canadian company.

In the 1980's, Mr. Richards no longer felt that writing sitcoms was rewarding, so he switched to 90-minute television movies.  While there was interest in what Mr. Richards was writing, the television networks canceled their 90-minute movie

programs. Mr. Richards then wrote screenplays either for the movie industry or for 2-hour television movies.

During the 1980's and 1990's, Mr. Richards engaged in a variety of writing activities. He tried to sell his screenplays to the various studios; one project was scheduled for production on three occasions, but it fell through before the deal was signed. On another occasion, Columbia Pictures paid Mr. Richards an option of $1,500 but did not purchase his screenplay. According to Mr. Richards, there was a lot of interest in his work, but if an executive who liked his screenplay left the company, then his project was dropped. Mr. Richards experienced numerous setbacks. He approached specific actors for whom he wrote screenplays, and it appears they were interested in the screenplays. However, due to unforeseen personal problems of one actor, the busy schedules of all performers, and disputes with movie executives, these projects were placed on hold.

Mr. Richards did not have a regular agent. He would hire an agent when it came time to discuss money with the movie executives. Apparently an agent can obtain a higher price. Mr. Richards testified that he works on four to six different screenplays at a time, and he believes he could receive a lot of money if he sold one. In 1993 or 1994, Mr. Richards pitched an idea about a screenplay he was thinking about writing to an agent at Creative Artists Agency. The agent thought it was a great

idea and told Mr. Richards he would try to market it. Mr. Richards wrote the screenplay, and, as of the date of trial, the agent was still helping with the marketing of this screenplay.

Mr. Richards also wrote lyrics to country and gospel songs. Mr. Richards does not know how to write melodies, so he collaborates with other people. Mr. Richards traveled to numerous country and gospel concerts in furtherance of this activity. Mr. Richards has not sold a song.

Attached to Schedule C is a list of the items which were allocated under the "allowable materials expense" for Mr. Richards' writing activity. They are as follows:

| Expense | Amount |
|---|---|
| Typewriter (ribbons & repairs) | $198 |
| Stationery, desk & office supplies | 940 |
| Registry | 680 |
| Copies | 370 |
| Research books, magazines & trade pub. | 760 |
| Must-see movies, stage plays, country & gospel concerts | 1,140 |
| Travel trailer maint., supplies & repairs | 2,480 |
| Research trip to Alaska | 3,296 |
| Research trip to Mexico | 1,319 |
| Miscellaneous[1] | 3,120 |
| TV sets, VCR & video tapes | 569 |
| Audio tape recording & copying equip. plus studio time fees | 560 |
| Audio master & 10 min. demo tapes | 414 |
| Fax messages and responses | 115 |
| Shipping costs | 1,189 |
| Office preparation | 180 |
| Long distance calls | 1,114 |
| Cash telephone calls | 240 |
| Total | 18,684 |

[1] These appear to be travel expenses.

Section 183(a) generally provides that if an activity engaged in by an individual is not entered into for profit, no deduction attributable to the activity shall be allowed, except as otherwise provided in section 183(b). An "activity not engaged in for profit" means any activity other than one for which deductions are allowable under section 162 or under paragraphs (1) and (2) of section 212. Sec. 183(c).

Section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. To be engaged in a trade or business within the meaning of section 162, "the taxpayer must be involved in the activity with continuity and regularity and * * * the taxpayer's primary purpose for engaging in the activity must be for income or profit." Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).

In order for taxpayers to deduct expenses of an activity pursuant to section 162, profit must be their primary or dominant purpose for engaging in the activity. See Wolf v. Commissioner, 4 F.3d 709, 713 (9th Cir. 1993), affg. T.C. Memo. 1991-212; Polakof v. Commissioner, 820 F.2d 321 (9th Cir. 1987), affg. per curiam T.C. Memo. 1985-197; Independent Elec. Supply, Inc. v. Commissioner, 781 F.2d 724, 726 (9th Cir. 1986), affg. Lahr v. Commissioner, T.C. Memo. 1984-472; Carter v. Commissioner, 645 F.2d 784, 786 (9th Cir. 1981), affg. T.C. Memo. 1978-202; Hirsch

v. Commissioner, 315 F.2d 731, 736 (9th Cir. 1963), affg. T.C. Memo. 1961-256. Whether the taxpayer had the requisite profit objective is a question of fact to be resolved from all relevant facts and circumstances. See, e.g., Drobny v. Commissioner, 86 T.C. 1326, 1341 (1986), affd. 113 F.3d 670 (7th Cir. 1997); sec. 1.183-2(b), Income Tax Regs. Profit in this context means economic profit independent of tax savings. See, e.g., Antonides v. Commissioner, 91 T.C. 686, 694 (1988), affd. 893 F.2d 656 (4th Cir. 1990).

Section 1.183-2(b), Income Tax Regs., provides a non-exclusive list of factors we consider to determine whether the taxpayers are engaged in the venture with a profit objective. They include: (1) The manner in which the taxpayers carried on the activity; (2) the expertise of the taxpayers or their advisers; (3) the time and effort expended by the taxpayers in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayers in carrying on other similar or dissimilar activities; (6) the taxpayers' history of income or loss with respect to the activity; (7) the amount of occasional profits that are earned; (8) the financial status of the taxpayers; and (9) whether elements of personal pleasure or recreation are involved. No single factor is controlling, and we do not reach our decision by merely counting factors that support each party's

position.  See <u>Dunn v. Commissioner</u>, 70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980); sec. 1.183-2(b), Income Tax Regs.  Certain elements are given more weight than others because they are more meaningfully applied to the facts in our case.

Upon reviewing the entire record, we conclude that, during the year at issue, Mr. Richards was engaged in his writing activity with the requisite profit objective.

We first look to the manner in which Mr. Richards carried on the activity.  Mr. Richards managed some aspects of this activity in a businesslike fashion.  He hired agents to help him with negotiating prices for the sale of his screenplays.  Moreover, Mr. Richards has a long professional history as a writer--and as a successful writer.  Mr. Richards has numerous contacts and devotes much of his time and energy to carrying on this activity. Mr. Richards did not have income from other sources, and petitioners did not derive great tax benefits from the claimed losses.

Although Mr. Richards' efforts were not successful in producing net profits for a number of years, this may be the result of at least two factors:  (1) The precarious nature of the entertainment business, and (2) the claiming of expenses not properly allocable to the writing activity.  We do not believe that the lack of unreported income in this situation negates the presence of a profit objective.  We hold that Mr. Richards was a

professional writer and engaged in his writing activity with a profit objective.

## 2. Writing Activity Expenses

Section 162(a) allows the deduction of "ordinary and necessary" expenses paid or incurred during the taxable year in carrying on any trade or business. Whether an expenditure is ordinary and necessary is a question of fact. See Commissioner v. Heininger, 320 U.S. 467, 475 (1943). An ordinary and necessary expense is one which is appropriate and helpful to the taxpayer's business and which results from an activity which is a common and accepted practice. See Boser v. Commissioner, 77 T.C. 1124, 1132 (1981), affd. without published opinion (9th Cir. 1983).

Deductions are a matter of legislative grace. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Taxpayers must keep sufficient records to establish deduction amounts. See sec. 6001; Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965). Generally, except as otherwise provided by section 274(d), when evidence shows that a taxpayer incurred a deductible expense, but the exact amount cannot be determined, the Court may approximate the amount. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). The Court, however, must have some basis upon which an estimate can be made. See Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Petitioners submitted numerous copies of canceled checks and receipts. Some canceled checks correspond with the receipts, while others, along with copies of credit card statements, bear no indication of the precise nature of the underlying expenses.

Supplies

Petitioners claimed a deduction of $198 for IBM typewriter ribbons and repairs. Mr. Richards testified that he typed all of his written material on his typewriter. Petitioners provided a receipt for the purchase of typewriter ribbons in the amount of $74. We find that this is an ordinary and necessary expense for Mr. Richard's writing activity. Accordingly, we hold that petitioners are entitled to a deduction of $74 for typewriter ribbons.

Petitioners claimed a deduction for stationery, a desk, and office supplies in the amount of $940. These supplies include reams of paper, envelopes, pens and markers, tape, files, folders, and fasteners. Petitioners provided receipts which support their claim that they purchased paper, envelopes, labels, etc., which total $128.[3] We find this an ordinary and necessary business expense for a writer, and therefore, petitioners are entitled to a deduction of $128.

---

[3] There were many receipts that simply stated "school supplies" which we did not take into consideration, since there is no indication as to what was purchased.

Registration

Petitioners claimed a deduction of $680 for registration of Mr. Richards' screenplays and lyrics with the Writers Guild of America and the U.S. Register of Copyrights.  Petitioners submitted canceled checks made out to the Writers Guild of America and the U.S. Register of Copyrights which total $180. Accordingly, we hold that petitioners are entitled to a deduction of $180 for registration.

Copies

Petitioners claimed a deduction of $370 for photocopies of Mr. Richards' novels, screenplays, lyrics, and outlines of such. Petitioners provided receipts and canceled checks in the amount of $87.  We hold that this is a legitimate business expense and that petitioners are entitled to a deduction of $87 for photocopies.

Research Books, Magazines and Trade Publications

Petitioners claimed a deduction of $760 for books, magazines, and trade publications.  In petitioners' documents are bills or correspondence from The Desert Sun (which appears to be a local newspaper), Country Woman, Bottom Line, Condé Nast Traveler, and Better Homes and Gardens.  There are also numerous receipts from The College of the Desert,[4] which show generally

---

[4]  Mrs. Richards worked part time at this school's bookstore.

that books were purchased, but there is no indication what types of books were purchased.

Generally the cost of a daily newspaper of general circulation is a nondeductible personal expense. See sec. 262; Wallendal v. Commissioner, 31 T.C. 1249, 1252 (1959). Petitioners have not demonstrated that they subscribed to the newspaper solely or principally for business purposes. See id. A general circulation newspaper clearly contains a significant amount of information which is inherently of a personal interest. See Pollak v. Commissioner, T.C. Memo. 1984-597. Petitioners are not entitled to a deduction for the local newspaper.

Additionally, taxpayers must provide evidence sufficient to establish a specific connection between the expenditures and the taxpayer's trade or business as a writer. See Gorman v. Commissioner, T.C. Memo. 1986-344. Petitioners did not establish a business connection to any of the magazines or the books. These types of magazines are inherently personal, and we conclude that they are not business expenses under section 162. Furthermore, even if there were other subscriptions that were related to Mr. Richards' business, petitioners have failed to prove any amounts for those items. Accordingly, petitioners are not entitled to a deduction for these items.

Movies, Plays, and Country and Gospel Music Concerts

Petitioners claimed a deduction of $1,140 for tickets to movies, plays, and music concerts.  Mr. Richards testified that it is a lesson to him to see an actor give a great performance.  Mr. Richards also stated that one of his greatest ambitions is to write the book and lyrics for a Broadway musical comedy and that is why petitioners go to the theater.  We find that these expenses are inherently personal, and Mr. Richards has not established a business connection to his writing activity.

Travel, Meals, and Entertainment

Mr. Richards testified that he traveled to Branson, Missouri, and Las Vegas and Laughlin, Nevada, to see and work with country and gospel performers, to work on screenplay projects, and to meet with contacts.  Petitioners deducted the expenses of these trips as business expenses in the amount of $3,120.  Petitioners retained receipts from hotels and campgrounds but did not maintain any other records.

Petitioners claimed a deduction of $2,480 for travel trailer maintenance, supplies, and repairs.  The trailer was pulled behind petitioners' Ford truck.  On their return, petitioners claimed that the trailer was used exclusively for business and research trips.  Included in the $2,480 are expenses for registration, insurance, repairs, annual campground fees, and incidental expenses.

Taxpayers may deduct travel expenses incurred while away from home in pursuit of a trade or business. See sec. 162(a)(2). Traveling expenses are governed by the strict substantiation requirements of section 274(d). Under section 274(d), petitioners must substantiate by adequate records or by sufficient evidence corroborating their own statement: (1) The amount of the expense; (2) the time of travel; (3) the place of travel; and (4) the business purpose of the expense. See sec. 274(d); sec. 1.274-5T(b)(2), (c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). If petitioners fail to meet the provisions of section 274(d), we cannot employ the principles of Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), to estimate petitioners' travel expenses. See Keating v. Commissioner, T.C. Memo. 1995-101; sec. 1.274-5(a), Income Tax Regs.

To substantiate a deduction by means of adequate records, a taxpayer must maintain an account book, diary, log, statement of expense, trip sheets, and/or other documentary evidence which, in combination, are sufficient to establish each element of expenditure or use. See sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

Petitioners did not provide any records that would substantiate when and where they traveled and the business purpose of each trip. The receipts that petitioners submitted do not satisfy the provisions of section 274(d). Petitioners have

not met the stringent requirements of section 274(d), and they are not entitled to a deduction for travel, meals, and entertainment.

Petitioners also took two "research" trips in 1994. Petitioners went to Alaska and Mexico; these trips cost $3,296 and $1,319, respectively. On petitioners' return it is explained that the purpose of these trips was to "obtain on-site data and photos for in-progress development of screenplay project." Mr. Richards testified that Mrs. Richards went along on the trips as his photographer. The costs included airfare for both petitioners, cruise fare, escorted side tours, travel insurance, and incidental expenses. Mr. Richards testified that they went to Mexico to see a comedienne, a prospect for whom he thought he could write material. Mr. Richards did not state whether he ever wrote material for the comedienne.

The expenses for these research trips also fall under the requirements of section 274(d), and we find that petitioners have failed to satisfy such requirements. Petitioners have proven that they incurred these expenses, but they have not established that these expenses were sufficiently connected to a trade or business. Trips consisting of cruises, sightseeing, and tours are essentially for personal enjoyment, and petitioners have not proven otherwise. Therefore, respondent is sustained on this issue.

Television Sets, VCR, and Video Tapes

Petitioners claimed a deduction of $569 for two television sets, a VCR, and video tapes.  In the attachment to Schedule C, petitioners claim the video tapes are for research film and tape library.  Some of the videos are demo tapes of gospel and country artists and songs.  Petitioners did not address this issue at trial.

Television sets and VCR's are inherently personal items under section 262.  These are items that most households have for personal entertainment, and petitioners have not established otherwise.  Furthermore, petitioners have not shown that the cost of video tapes of artists is an ordinary and necessary expense to Mr. Richards' business as a writer.  Therefore, petitioners are not entitled to a deduction of $569 for these items.

Audio Tape Recording, Studio Fees, Audio Master Tapes, and Demo Tapes

Petitioners claimed a deduction of $560 for the rental of recording equipment and for the mixing of tapes.  Petitioners also claimed a deduction of $414 for the cost of audio tapes and demo tapes.  Mr. Richards would send the demo tapes to music contacts.

It appears that paying for studio time for recording artists and then sending out the demo tapes is beyond the scope of Mr. Richards' business as a writer.  This activity is ordinarily that

of a promoter or manager.  Mr. Richards did not adequately address this issue at trial, and there is no evidence in the record to further explain these expenses.  We do not find these expenses to be ordinary and necessary with regard to Mr. Richards' writing activity.

Fax

Petitioners claimed a deduction of $115 for the transmission of scripts and lyrics by fax via retail establishments that offered fax services.  In the record are receipts for fax services in the amount of $7.  Petitioners did not maintain any records detailing what was faxed and to whom.  Without adequate substantiation, we cannot allow this deduction.  Therefore, petitioners are not entitled to a deduction of $115.

Shipping

Petitioners claimed a deduction of $1,189 for shipping costs.  Mr. Richards claimed that he sent scripts via Federal Express, United Parcel Service, and the U.S. Postal Service.  Mr. Richards would also send his screenplays and lyrics to himself by U.S. registered mail for copyright protection of his work.  The record contains receipts from the U.S. Postal Service totaling $439 for shipping costs and registered mail.  While there are no notations on the receipts as to what was shipped, there are notations on some of the canceled checks that indicate that the expenses were for Mr. Richards' writing activity.  We believe

this is an ordinary and necessary business expense that petitioners incurred. Accordingly, petitioners are entitled to a deduction of $439.

### Telephone

Petitioners claimed deductions of $1,114 for long distance and $240 for "estimated" cash telephone calls. Petitioners claimed these were business calls to producers, agents, artists, managers, movie executives, and casting directors. Petitioners provided copies of their telephone bills for 1994. It appears that petitioners designated all long distance calls from their residence as business calls. Petitioners did not detail whom they called or the business purpose.

Since petitioners did not identify the business purpose of any long distance calls, they are deemed to be personal under section 262 and not deductible.

### Vehicle Expense

Petitioners drove a 1970 Ford truck during the year at issue. Petitioners claimed a vehicle expense of $8,540 for the business use of their vehicle. This amount is based on 80 percent of actual expenses attributed to the vehicle. Petitioners retained receipts for gas purchases, repairs, insurance, and registration. Petitioners did not maintain records of the business or personal use of the vehicle.

Under section 280F(d)(4), petitioners' truck is listed property and is subject to the stringent substantiation requirements of section 274(d). See sec. 280F(d)(4)(A)(i), (ii), (5)(A). Petitioners must substantiate by adequate records the four requirements of section 274(d). See sec. 274(d); sec. 1.274-5T(b)(6), (c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

While petitioners did retain receipts which indicate the amount of each expenditure, petitioners have failed to show the business and total usage of the truck. Petitioners did not establish how they came up with the 80-percent figure, nor did they maintain any logs or records on the use of their truck. Based on this lack of evidence, we cannot find that petitioners are entitled to a deduction for vehicle expenses. Therefore, respondent is sustained on this issue.

Office/Household Expenses

Petitioners claimed a deduction of $5,132 for "allowable office/household expenses". This amount reflects 33 1/3 percent of petitioners' household expenses. The household expenses consist of insurance, mortgage interest, utilities, cable television, pool service, yard service, home improvements, and numerous expenses at retail stores.

Section 262 disallows any deduction for personal, living, or family expenses, and included in this category is the expense of

maintaining a household.  See sec. 1.262-1(b)(3), Income Tax Regs.  Section 262(b) provides that any charge (including taxes thereon) for basic local telephone service with respect to the first telephone line provided to any residence of the taxpayer shall be treated as a personal expense.

Under section 280A(a) and (c)(1)(A), ordinary business expenses relating to use of any portion of a taxpayer's home are not allowable unless the taxpayer establishes that the portion of the taxpayer's home to which the expenses relate was used exclusively and on a regular basis as the principal place of the taxpayer's trade or business.  See Hamacher v. Commissioner, 94 T.C. 348, 353 (1990).

Petitioners have not shown how these expenses, which are clearly personal, are related to a trade or business.  Mr. Richards stated at trial that he had an office in the corner of a partially converted garage, but none of these expenses appear to relate to the garage.  Petitioners offered no further evidence or testimony on whether any portion of their house was used exclusively for business.  Accordingly, respondent is sustained on this issue.[5]

---

[5]  We note that petitioners are entitled to deduct their mortgage interest paid during 1994 on Schedule A.  However, it does not appear that this amount would exceed petitioners' standard deduction.

Petitioners claimed a deduction of $180 for office preparation. As claimed on the attachment to Schedule C, this includes supplies for a "slowly-in-progress conversion of garage-to-office already in use as my primary workplace". Petitioners did not address this issue at trial, nor have we been able to locate any receipts for expenditures on this issue. Therefore, petitioners are not entitled to a deduction for office preparation.

## 3. Actress-Model Activity

Mrs. Richards was born in 1922 and started acting while a child in the "Our Gang" comedies. She did not act for a number of years, but, during her marriage to her first husband who was an actor, she decided that she wanted to get back into acting. She appeared in the television series "The Defenders" and was in the movie "Splendor in the Grass". Mrs. Richards' first husband died in 1959, and, 3 years later, she married Mr. Richards. When petitioners moved to Palm Springs in the early 1960's, she hired an agent. She has had an agent ever since. During the year at issue, Mrs. Richards' agent was with Don Schwartz and Associates.

According to her resume, Mrs. Richards has performed for television productions and commercials, motion pictures, radio, and the theater. Mrs. Richards also did some modeling for catalogs and brochures. Mrs. Richards maintained a notebook in which she would record whether she had an audition, where it was

located, and what she was to wear. She would also note whether she had a callback and whether she was hired. According to the diary, during 1994 Mrs. Richards had one modeling shoot with United States Purchasing Corp. (for their catalog) and four auditions.

Since the acting jobs were sporadic, Mrs. Richards worked as a clerk, registrar, and secretary for the Palm Springs Unified School District (PSUSD). Mrs. Richards worked for PSUSD for 29 years and had retired before the year at issue. During 1994, Mrs. Richards received income from her pension, from the College of the Desert (a book store where she worked part time), and from serving as a proctor in administering the Scholastic Aptitude Test. Mrs. Richards received as compensation $1,574 for the modeling shoot with United States Purchasing Corp.

On their 1994 Schedule C, petitioners claimed the following expenses with respect to Mrs. Richards' actress-model activity:

| Expense | Amount |
| --- | --- |
| Academy players directory (listing) | $60 |
| Agent fees | 262 |
| Photo session | 267 |
| Duplicate photo | 231 |
| Must-see shows, plays & movies | 480 |
| Miscellaneous | 960 |
| Long distance telephone calls | 270 |
| Cash telephone calls | 56 |
| Total | 2,586 |

As before, we initially must decide whether Mrs. Richards' actress-model activity was engaged in for profit. Upon reviewing the entire record, we conclude that during 1994, Mrs. Richards

was engaged in the actress-model activity with the requisite profit objective.

Mrs. Richards managed some aspects of this activity in a businesslike fashion. She had an agent and kept a journal of her auditions and callbacks. Moreover, Mrs. Richards has a long history in the acting profession. She has been in numerous plays, commercials, television shows, and a few movies.

4. Actress-Model Expenses

Expenses for the Academy Players Directory, agent fees, photo session, and duplicate photos are all ordinary and necessary expenses of an actress-model activity. Petitioners submitted documentation to show that they incurred these expenses in 1994, and, therefore, we find that petitioners are entitled to deductions of $60, $262, $267, and $231, respectively for these expenses.

Petitioners claimed a deduction of $960 for miscellaneous expenses for hair and wig preparation, cosmetics, clothing, alterations, cleaning, supplies, fur coat storage, gifts, supplies, and meals. Petitioners did not offer any documentation or testimony on the breakdown of how much was spent on each item. Furthermore, some of these expenses are not deductible business expenses.[6] Therefore, without any help from the record, we

---

[6] It is well settled that clothing that is suitable for general or personal wear does not qualify as a business expense
(continued...)

cannot determine the amounts of any of these expenses, and petitioners are not entitled to a deduction of $960 for miscellaneous expenses.

For the remainder of the expenses, must-see movies of $480 and telephone expenses of $326,[7] we hold that they are not deductible expenses for the same reasons explained under Mr. Richards' writing activity.

## 5. Loss Carryforward

Petitioners claimed a loss carryforward from their 1993 income tax return in the amount of $15,892.  Petitioners submitted their 1993 return, which appears very similar to the 1994 return.  Petitioners did not provide any evidence to prove that they are entitled to carry over the loss from 1993.

Petitioners' return for 1993 does not alone establish that petitioners incurred the loss in question, and it is not evidence of the correctness of the figures and information contained therein.  See Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979).

---

[6](...continued) under sec. 162.  See, e.g., Green v. Commissioner, T.C. Memo. 1989-599.  Such costs are not deductible even when it has been shown that the particular clothes would not have been purchased but for the employment.  See Stiner v. United States, 524 F.2d 640 (10th Cir. 1975); Donnelly v. Commissioner, 262 F.2d 411 (2d Cir. 1959), affg. 28 T.C. 1278 (1957).  Furthermore, expenses related to hair salon visits and cosmetics are inherently personal expenses under sec. 262.

[7]  Mrs. Richards gave the Court the phone number of her agent.  However, we could not find this number on any of the bills.

Therefore, petitioners are not entitled to a loss carryforward of $15,892.

## 6. Accuracy-Related Penalty

Mr. Richards prepared petitioners' tax return for the year at issue.

Section 6662(a) imposes a penalty of 20 percent on any portion of an underpayment of tax that is attributable to negligence or disregard of rules or regulations.  See sec. 6662(a) and (b)(1).  "Negligence" is defined as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and the term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).  A position with respect to an item is attributable to negligence if it lacks a reasonable basis.  See sec. 1.6662-3(b)(1), Income Tax Regs.  Moreover, taxpayers are required to keep adequate books and records sufficient to establish the amount of deductions or other items required to be shown on their returns.  Failure to maintain adequate books and records or to substantiate items properly also constitutes negligence.  See id.

Section 6664(c)(1) provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position with respect to that portion and that the taxpayer acted in good faith with respect to that portion.  See sec. 6664(c)(1).

The record herein establishes that petitioners were negligent. Petitioners did not maintain proper records for the majority of their claimed deductions. Petitioners also claimed deductions that were clearly personal expenses. Accordingly, petitioners are liable for the accuracy-related penalty for negligence under section 6662(a).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155.</u>